IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SETH A. SAFIER, for himself
and all others similarly situated,

            **Plaintiff,**

vs.                                                              Civ. No. 09-801 JCH/ACT

STATE FARM FIRE AND
CASUALTY COMPANY, an
Illinois Corporation; STATE FARM
MUTUAL AUTOMOBILE INSURANCE
COMPANY, an Illinois Corporation;
SERVPRO INDUSTRIES, INC., a Nevada
Corporation; and SPONM, INC. d/b/a/
SERVPRO OF NE ALBUQUERQUE, a New
Mexico Corporation,

            **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's *Motion to Remand*, filed September 19, 2009 [Doc. 20], and Plaintiff's *First Motion to Amend/Correct Complaint*, filed January 4, 2010 [Doc. 65]. The Court having carefully considered the motions, briefs, affidavits, attachments, and relevant law, and being otherwise fully informed, finds that Plaintiff's remand motion is not well taken and should be denied and that his motion to amend the complaint should be granted.

## BACKGROUND

On July 7, 2009, Plaintiff Seth A. Safier filed a Class Action Complaint in New Mexico's Second Judicial District Court for breach of statutory, common law, and contractual duties against State Farm Fire and Casualty Company, State Farm Mutual Automobile Insurance Company, ServPro Industries, Inc., and SPONM, Inc. d/b/a/ ServPro of NE Albuquerque ("Defendants").

Defendants State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company timely filed a Notice of Removal on August 17, 2009 [Doc. 1].

Plaintiff's allegations are as follows: Plaintiff is a California resident who owns rental property in New Mexico. On February 7, 2009, Plaintiff obtained a rental dwelling insurance policy from the State Farm Defendants.[1] On or about February 11, 2009, Plaintiff's tenant noticed water damage to the floors and walls of the back bedroom of Plaintiff's rental property. Plaintiff immediately summoned an emergency plumber to attend to the property, and called State Farm to report the damage and to initiate a claim under his policy. The State Farm representative with whom Plaintiff spoke informed him that Plaintiff was required to call one of two water remediation companies, either ServPro or ServiceMaster, to begin the process of "drying out" the property. Although Plaintiff indicated that he would prefer to call a different company to at least get another estimate, the State Farm representative told Plaintiff that he must use one of those two companies in order to receive coverage under his policy. The representative indicated that State Farm has an ongoing relationship with those two companies, that State Farm receives "preferred" or discount pricing from them, and that Plaintiff would receive such "preferred" pricing as well.[2]

---

[1] Plaintiff has named as defendants both State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company. For purposes of this ruling, State Farm Fire and State Farm Mutual will be addressed as "the State Farm Defendants" or "State Farm." State Farm Mutual contends that it is not a party to Plaintiff's contract with State Farm Fire, and has filed a motion to dismiss it from this case [Doc. 3]. That motion will be addressed in a later ruling. The Court's referral to both entities together as defendants is not meant to indicate its belief that State Farm Mutual is a proper defendant.

[2] Plaintiff's initial Complaint did not contend that the State Farm representative indicated that Plaintiff would receive "preferred" pricing from ServPro or ServiceMaster; only that State Farm would receive such discounted pricing. *See* Complaint, attached as Ex. A to Doc. 1, at 4 ¶ 17. The allegation that State Farm's representative explicitly indicated to Plaintiff that he would receive "preferred" pricing is made only in Plaintiff's Amended Complaint, attached as Ex. A to Doc. 65, at 4-5 ¶ 22.

Plaintiff acceded to State Farm's demand and called ServPro. ServPro came to Plaintiff's property on February 11, 2009 and installed two air-drying systems after Plaintiff entered into an oral agreement with ServPro in which ServPro agreed to charge Plaintiff a preferred price.[3] At no point did the State Farm or the ServPro representative indicate that Plaintiff would not receive preferred pricing if his claim for water damage was denied by State Farm. ServPro later billed Plaintiff $1,097.09 for the use of two air dryers for seven days. Plaintiff contends that, relative to other local water remediation companies, ServPro charged him a 40%-50% premium and that he did not receive the "preferred" pricing that he was promised. Plaintiff also alleges that ServPro had an agreement with State Farm in which, in return for making ServPro one of the two remediation companies policy-holders were allowed to use, ServPro either paid State Farm a referral fee or kicked back to State Farm the difference between the retail price they charged customers who ultimately had their claims denied and the "preferred" pricing that they promised State Farm.

Plaintiff contends that his policy with State Farm covers direct physical loss caused by water damage, where water damage is defined as "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part or a system or appliance containing water or steam." When Plaintiff spoke with State Farm's agent on February 11, 2009, the agent told him that "water damage is tricky," and that claims based on water damage are "typically denied." When he spoke with a different State Farm agent the next day, that agent

---

[3] Plaintiff's initial Complaint did not contend that the ServPro representative indicated that Plaintiff would receive "preferred" pricing from ServPro. The allegation that ServPro's representative explicitly indicated to Plaintiff that he would receive "preferred" pricing is made only in Plaintiff's Amended Complaint at p.5 ¶ 24, and Plaintiff's additional claim for breach of oral contract is found only in the Amended Complaint at pp. 13-14 ¶¶ 60-64.

informed Plaintiff that State Farm was denying his claim because the damage was caused by a "continuous leak or seepage" from the temperature and pressure ("T&P") valve on the hot water heater, and that Plaintiff had a separate leak under the kitchen sink that was also continuous.[4] The agent stated that his conclusion resulting in claim denial was based entirely on the report provided by the emergency plumber that Plaintiff had contacted and on viewing the cell-phone camera pictures taken by one of the ServPro representatives that had crawled under the property, and that he had not performed any independent examination.

On February 16, 2009, State Farm issued a written denial of the claim on the ground that the damage was caused by "repeated seepage or leakage of water or steam." On March 9, 2009, Plaintiff challenged the denial of his claim in writing, and, on March 16, 2009, State Farm reopened Plaintiff's claim under a reservation of right. As it conducted further investigation, State Farm requested, and Plaintiff provided, further information including water bills and the T&P valve that had been attached to the hot water heater. The water bills showed the following water use at the property:

(a) from November 10, 2008 to December 11, 2008, one unit (approximately 758 gallons);

(b) from December 11, 2008 to January 13, 2009, zero units; and

(c) from January 13, 2009 to February 11, 2009, 38 units (approximately 28,424 gallons).

On May 27, 2009, State Farm reinstated its original denial of Plaintiff's claim, including denying coverage of damage from the leak "from around the kitchen sink" without explanation.

---

[4] Plaintiff's policy states that it does not insure for loss caused by "continuous or repeated seepage or leakage of water or steam from a...plumbing system...which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot." *See* Certified copy of Plaintiff's State Farm Rental Dwelling Policy, attached as Ex. A. to Memorandum in Support of Defendants' Motion to Dismiss [Doc. 4] at 5-6.

Plaintiff contends that State Farm's investigation into his claim was negligent or inadequate, that the company has refused to explain its conclusion that the damage was caused by "continuous seepage or leakage of water or steam" rather than from "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam," and that State Farm's conclusion is in bad faith and not supported by the facts. He has also challenged State Farm's refusal to cover lost rent and certain other damages that he contends the policy covers irrespective of whether the loss was caused by "repeated seepage or leakage of water or steam."

Based on his experiences with State Farm and ServPro, Plaintiff filed suit on behalf of himself and two different classes. The classes are defined as follows:

> All State Farm New Mexico insurance policyholders, who were not compensated for property damage and/or loss arising from water damage due to a finding that the water damage was caused by continuous or repeated seepage or leakage of water or steam....
> ("State Farm Class")
>
> and
>
> All State Farm New Mexico insurance policyholders, who used ServPro to clean-up or restore their properties following water damage and subsequently had their claims denied by State Farm....
> ("ServPro Class")

Amended Complaint, attached as Ex. A to Doc. 65 at p. 9, ¶ 45.[5]

With respect to the State Farm Class, Plaintiff alleges that State Farm knew at the time it denied coverage to him and to similarly situated persons that it was obligated by the terms of its policies to compensate insureds for damage resulting from water damage and that it knowingly

---

[5] Plaintiff's initial Complaint defined the two classes similarly, but with the difference that they were limited to New Mexico residents. Plaintiff is not himself a New Mexico resident, and therefore could not serve as a class representative of either class as initially defined. His Amended Complaint corrects this error.

and routinely violated its contractual obligations by unfairly and illegally denying claims.  He alleges breach of contract, unfair and deceptive practices in violation of the New Mexico Insurance Code, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive practices under the New Mexico Unfair Practices Act.  On behalf of himself and the State Farm Class, Plaintiff seeks compensatory damages, punitive damages, statutory damages, treble damages under the Unfair Practices Act, injunctive relief, declaratory judgment, and attorneys' fees and costs.

With respect to the ServPro Class, Plaintiff alleges that the State Farm Defendants and ServPro Defendants acted together to charge him and those similarly situated a non-preferred price that resulted in kickbacks or referral fees being paid to State Farm, and that ServPro charges State Farm a lower rate when State Farm is covering a claim than when State Farm refers a customer but denies a claim.  He alleges breach of oral contract, unfair and deceptive practices in violation of the New Mexico Insurance Code, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive practices under the New Mexico Unfair Practices Act.  On behalf of himself and the ServPro Class, Plaintiff seeks compensatory damages, punitive damages, statutory damages, treble damages under the Unfair Practices Act, injunctive relief, declaratory judgment, and attorneys' fees and costs.

On August 17, 2009, the State Farm Defendants removed the case to this Court, without seeking the consent of the ServPro Defendants.  On August 27, 2009, Plaintiff sent State Farm's counsel a letter in which he explained what he contended to be the infirmities in their removal petition, but State Farm refused to stipulate to a remand to state court.  Thereafter, Plaintiff timely filed his motion for remand.

## **LEGAL STANDARD**

The State Farm Defendants removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. §§ 1332(d) and 1453, as well as pursuant to traditional diversity of jurisdiction principles as codified at 28 U.S.C. §§ 1332(a), 1367, and 1441(a).  Plaintiff's remand motion makes three primary arguments, which will be discussed in turn below: (1) jurisdiction does not exist under CAFA because the amount in controversy is not met; (2) this case is exempted from federal jurisdiction under CAFA's "local controversy" exception; and (3) this Court does not have traditional diversity jurisdiction over this case.  Because the Court concludes that it has jurisdiction under CAFA and that Plaintiff has not demonstrated that the "local controversy" exception applies, it does not reach the question of whether traditional diversity jurisdiction exists.

The Class Action Fairness Act gives federal district courts original jurisdiction over purported class actions in which (1) the aggregate amount in controversy exceeds $5 million exclusive of interest and costs; (2) any member of a class of plaintiffs is a citizen of a State different from any defendant; and (3) the proposed class consists of 100 or more persons.  28 U.S.C. §§ 1332(d)(2) and (5)(B).  A "class action" for CAFA purposes includes any civil action filed under Fed. R. Civ. P. 23 or a "similar state statute or rule of judicial procedure," 28 U.S.C. § 1332(d)(1)(b), such as Rule 1-023 NMRA under which Plaintiff filed this action.

Congress enacted CAFA "to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts."  *Coffey v. Freeport McMoran*, 581 F.3d 1240, 1243 (10th Cir. 2009).  CAFA's language and structure clearly indicate that Congress intended to create broad federal jurisdiction over class actions that satisfy CAFA's jurisdictional requirements, with exceptions to be construed narrowly.  *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006); *Palisades Collections LLC v.*

*Shorts*, 552 F.3d 327, 342 (4th Cir. 2008) ("CAFA unquestionably expanded federal jurisdiction and liberalized removal authority").[6]  Despite Congress's intention to expand federal jurisdiction, however, most courts, including all of the circuits that have considered the issue, have held that a defendant seeking to remove a case under CAFA still has the burden of establishing that the jurisdictional requirements are met, just as under traditional diversity jurisdiction.  *See, e.g., Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57-58 (2d Cir. 2006); *Morgan v. Gay*, 471 F.3d 468, 472-73 (3d Cir. 2006); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685-86 (9th Cir. 2006); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329-30 (11th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005).[7]  In the absence of binding precedent to the contrary, this Court agrees that a removing defendant bears the burden to demonstrate that the jurisdictional requirements have been met, even when the case is removed under CAFA.

Plaintiff, a California resident, does not contest that the minimal diversity requirement is met, as his Complaint alleges that the State Farm Defendants are citizens of Illinois.  Nor does he contest that the classes defined in his Complaint have at least 100 putative members.  Instead, Plaintiff contends that the State Farm Defendants have failed to demonstrate that the $5 million amount in controversy is met.  Where, as in this case, a complaint does not allege a specific amount in damages, the removing defendant must show that the amount in controversy exceeds

---

[6] One of the ways in which CAFA liberalizes removal authority is by changing the requirement, found in traditional removal jurisprudence, that all defendants must join in the notice of removal.  Under CAFA, any defendant may remove an action without the consent of any other defendant.  28 U.S.C. § 1453(b).  Thus, the fact that the ServPro Defendants did not join in the State Farm Defendants' removal notice is not relevant for purposes of assessing whether jurisdiction exists under CAFA.

[7] The Tenth Circuit has not directly addressed whether CAFA changes the party on whom the burden falls to establish the jurisdictional requirements.

the statutory minimum "by a 'preponderance of the evidence.'" *McPhail v. Deer & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (citing *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001)).[8]

The *McPhail* court noted the seeming logical contradiction that when a plaintiff is the proponent of federal jurisdiction, mere allegations of an amount in controversy suffice, but that when the proponent of federal jurisdiction is the party in whose interest Congress created diversity jurisdiction in the first place (the defendant), that party must come forward with proof of jurisdictional facts at a stage in the litigation where little actual evidence is available yet. 529 F.3d at 953. The Tenth Circuit therefore adopted the analysis of another court that had grappled with this "odd set of rules," *id.* at 952, and which explained the proper role of the preponderance of the evidence standard and how defendants might have a chance of satisfying it when the complaint is silent on the amount of damages. *See id.* at 954 (adopting the analysis of *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 540-43 (7th Cir. 2006)). Thus, a defendant must "establish jurisdiction by proving jurisdictional *facts* that made it *possible* that [the amount in controversy] was in play..." and "[i]t is only the jurisdictional facts that must be proven by a preponderance–not the legal conclusion that the statutory threshold amount is in controversy." *Id.* at 955 (emphasis in original). As the *Meridian* court explained, once the jurisdictional facts have been established by a preponderance of the evidence, "uncertainty about whether the plaintiff can prove his substantive claim, and whether damages...will exceed the threshold, does not justify dismissal. Only if it is 'legally certain' that the recovery...will be less than the jurisdictional floor

---

[8] Although *McPhail* and *Franklin* both involved cases in which the removing defendant had to demonstrate that the amount in controversy exceeded $75,000 for traditional diversity jurisdiction purposes, the same concepts apply to demonstrating the amount in controversy in CAFA cases where the complaint does not allege a specific amount in damages.

may the case be dismissed." 441 F.3d at 543.

The *McPhail* court held that, in order to demonstrate the facts necessary to support its assertion that the case may meet the amount in controversy, a defendant may rely on two methods that the State Farm Defendants use in this case. First, a defendant may make "an estimate of the potential damages from the allegations in the complaint" so that a "complaint that presents a combination of facts and theories of recovery that may support a claim in excess of [the amount in controversy] can support removal. *McPhail*, 529 F.3d at 955. A court may make the determination by "'[r]eading the face of the complaint,' even though the complaint did 'not specify the numerical value of the damage claim.'" *Id.* at 956 (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). In addition, the defendant may provide other documentation, such as affidavits, that can assist it in proving the jurisdictional facts to demonstrate the amount in controversy. *Id*.

## ANALYSIS

A. Amount in Controversy

By dissecting the substance and nature of the injuries described in Plaintiff's claims and the damages sought, providing evidence by affidavit of a plausible estimate of the number of class members and the likely value of their individual claims, and comparing this case to other decided cases alleging similar injuries, Defendants have easily met their burden of demonstrating that it is more likely than not that the aggregate amount in controversy exceeds $5 million.

Defendants' Notice of Removal presents evidence and argument related only to the potential value of claims against the State Farm Defendants, and demonstrates an amount in controversy in excess of $5 million without even considering the amount in controversy put in play by the claims of the ServPro class. *See* Notice of Removal [Doc. 1] at 5. Therefore, the

determination that the amount in controversy is satisfied is based only on the allegations of the State Farm class.

With its Notice of Removal, Defendants submitted the affidavit of Chris Blair, a systems analyst who works with State Farm's electronic Claims Service Record System ("CSR"), a complex relational database containing information regarding claims made by State Farm Fire policyholders. *See* Affidavit of Christopher J. Blair, attached as Ex. C to Doc. 1. Blair's affidavit indicates that, while the CSR does not track information that matches the exact parameters of the State Farm class, it contains information regarding the number of "water damage and freezing claims" for structural damage to New Mexico dwellings, the number of those claims that were denied, and the amount that State Farm Fire paid on granted claims. *See id.* at ¶ 3. According to Blair's affidavit, in the six years between July 2003 and August 2009,[9] State Farm received a total of 15,760 claims for "water and freezing" structural damage. *Id*. Of these claims, it made an indemnity payment for structural damage on 10,950 claims, and closed 4,081 of the claims without payment. The total amount State Farm paid on those 10,950 claims to compensate for structural damage was $53,947,247.66, for an average amount per paid claim of $4,926.69. *Id*.

Plaintiff correctly notes that State Farm's initial figures of potential claimants may overstate the number of potential members of the State Farm class, in that it covers those who had their water damage claims denied for any reason, whereas the State Farm class only includes those who had their water damage claims denied due to a finding of continuous or repeated seepage of water or steam. *See* Plaintiff's Motion to Remand [Doc. 20] at 9. In an effort to better

---

[9] Plaintiff's State Farm class definition contains no time limitation, but instead purports to capture "All State Farm New Mexico policyholders" who had water damage claims denied due to a finding of continuous or repeated seepage of water or steam.

approximate the potential number of claimants in the State Farm class, State Farm undertook a search for letters sent to its insureds over the six year period covered by the CSR records that denied a claim for water damage based on a finding of repeated or continuous leakage or seepage of water. *See* Affidavit of Christopher J. DeLara, attached as Ex. A. to Defendants' Response in Opposition to Motion to Remand [Doc. 32] at 1 ¶ 3. This record search located "over 500" letters denying coverage because of continuous leakage.[10]

Assuming 500 cases of wrongfully denied claims for structural damage alone, with an average paid claim amount of $4,926, places $2,463,000 at stake. Because Plaintiff seeks treble damages, *see* Complaint at 14 ¶ 71 and 15 ¶ E; Amended Complaint at 20 ¶ 90 and 22 ¶ F, this credibly brings the amount in controversy solely from the alleged wrongful denial of claims for structural damage to $7,389,000, well above the minimum jurisdictional amount in controversy.

Moreover, the average payment of $4,926 from which the amount in controversy is calculated includes only payment for structural damage, and does not include any amounts for loss of contents, lost rent, or additional living expenses, all amounts that Plaintiff claims State

---

[10] Plaintiff contends that this new evidence, clarifying and correcting the initial evidence brought forth by Defendants, should not be considered because the removing party must meet its burden of establishing federal jurisdiction in the notice of removal itself, rather than through a later document. *See* Plaintiff's Reply to Defendants' Response in Opposition to Motion to Remand [Doc. 41] at 4. Defendants stated the factual basis for jurisdiction in their Notice of Removal, and this affidavit filed after the Notice of Removal essentially corrects a numerical mistake in Defendant's calculation of the amount in controversy (actually resulting in a lower estimate of the amount in controversy) rather than changing or inventing the basis on which they are making their calculation. Therefore, this case is distinguishable from *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) in which the court did not admit a supplemental affidavit containing an economic analysis purporting to demonstrate that the jurisdictional minimum was met because the defendant provided no evidence of the amount in controversy in its removal notice. The Court is thus able to consider the supplemental affidavit in this case. *See* 28 U.S.C. § 1653; *Willingham v. Morgan*, 395 U.S. 402, 408 n.3 (1969) (superseded on other grounds).

Farm wrongfully refused to pay as well. While State Farm does not attempt to estimate or calculate these additional amounts, the Court may still take notice that such claims add some value to the amount in controversy, simply by "reading the face of the complaint," *McPhail*, 529 F.3d at 955.

In addition to compensatory damages, Plaintiff also seeks punitive damages. *See* Complaint at 12 ¶ 59 and 15 ¶ C; Amended Complaint at 17 ¶ 78 and 22 ¶ C. Punitive damages, if legally available, are properly considered in arriving at an estimate of the amount in controversy. *See Watson v. Blankinship*; 20 F.3d 383, 386 (10th Cir. 1994) (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238 (1943)). New Mexico law provides for punitive damages in bad-faith insurance cases demonstrating either improper failure to pay or failure to settle, both of which are alleged by the State Farm class. *See Sloan v. State Farm Mut. Auto Ins. Co. (In re Sloan)*, 135 N.M. 106, 108 (2004). As demonstrated by Defendants in their Notice of Removal, New Mexico courts have upheld punitive damage awards as great as 18 times higher than compensatory damages. *See* Notice of Removal [Doc. 1] at 6, ¶ 16. Given the credible estimate of compensatory damages for structural damage alone of $2,463,000, it would take a punitive to compensatory damages ratio of only 1.03 to 1 to reach the $5 million threshold. As Defendants have demonstrated that juries routinely award, and courts uphold, ratios much higher than this, Defendants have once again met their burden to demonstrate the requisite amount in controversy.

In addition to compensatory, treble, and punitive damages, Plaintiff also seeks attorneys' fees, which are also properly added to the calculation of the amount in controversy. *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1339-40 (10th Cir. 1998) (citing *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)). Defendants' Notice of Removal provides a credible basis to

increase the total calculation of the amount in controversy by an additional 30 percent to account for the demand for attorneys' fees. This is not a figure arrived at by pure speculation, but rather is based on an empirical study by the Federal Judicial Center of attorneys' fee awards in successful class action cases. *See Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007). This credible 30 percent increase, based on empirical evidence, further serves to convince the Court that the amount in controversy threshold is easily met, and the Court concludes that it has jurisdiction under CAFA.

      B.  <u>CAFA's "Local Controversy" Exception</u>

Plaintiff contends that the Court must decline jurisdiction because this case meets CAFA's "local controversy" exception. CAFA dictates that a federal court must decline to exercise jurisdiction if: (1) greater than two-thirds of the members of all proposed classes are citizens of the state in which the action was filed; (2) no other class action has been filed during the three-year period preceding the filing of this class action that involves similar factual allegations against any of the defendants; and (3) at least one defendant is a citizen of the state in which the action was filed and that local defendant is one "from whom significant relief is sought by members of the plaintiff class" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. 1332(d)(4)(A). The parties do not dispute that the classes are comprised of more than two-thirds New Mexico citizens, nor do Defendants contend that a similar class action suit has been filed in the past three years. Thus, the only questions relevant to determining whether the local controversy exception to CAFA applies are whether Plaintiff seeks "significant relief" from Defendant SPONM, and whether SPONM's conduct forms a "significant basis" for Plaintiff's claims.

      CAFA does not define "significant" with respect to either the relief sought or the conduct

creating the basis for the claims asserted.  However, "[c]ourts generally have required that the local defendant's conduct be significant when compared to the alleged conduct of the other defendants and that 'the relief sought against that defendant is a significant portion of the entire relief sought by the class.'" *Coffey v. Freeport McMoran*, 581 F.3d 1240, 1244 (10th Cir. 2009) (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006))

While a defendant has the burden to establish jurisdictional requirements, once they have done so, a plaintiff seeking remand has the burden to demonstrate the applicability of any exception to jurisdiction, such as the local controversy exception.  *See Coffey*, 581 F.3d at 1243; *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023-24 (9th Cir. 2007); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 680-81 (7th Cir. 2006); *Evans*, 449 F.3d 1159, 1164 (11th Cir. 2006).  The local controversy exception is intended to be a narrow one "with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Evans*, 449 F.3d at 1163 (*citing* S. Rep. No. 109-14 at 42 (2005)).  Plaintiff has failed to demonstrate that this case falls under the local controversy exception.

The definition of "class" for CAFA purposes is "all of the class members in a class action."  28 U.S.C. 1332 (d)(1)(A).  Thus, to determine whether "the plaintiff class" seeks "significant relief" from a local defendant, the Court must look to the claims against the local defendant in relation to the total claims against all defendants by members of all classes.  The only New Mexico Defendant in this case is SPONM, Inc., the local franchisee of ServPro.  Plaintiff has not demonstrated how the overall group of claimants seeks "significant relief" from SPONM in comparison to the total relief sought.  Indeed, none of the State Farm class claimants seek any relief against SPONM, because their claims are exclusively against State Farm for failure to pay their water damage claims, and have nothing to do with allegations of malfeasance

against the local remediation company.  Plaintiff has indicated neither how many members the ServPro class might contain relative to the State Farm class, nor how their damages might compare.

Looking at Plaintiff's own claim as an example, Plaintiff claims that he paid ServPro approximately $1,100 for remediation services, which he alleges was 40%-50% above other local providers.  This assertion would indicate that Plaintiff paid approximately $350 more than he would have without the alleged illegal agreement between State Farm and ServPro.  This damage amount pales in comparison to the average $4,926 base amount that State Farm paid on water damage claims.  In addition, the $350 in damages is likely dwarfed by the amount that Plaintiff was allegedly damaged by State Farm, in that he seeks to be compensated by State Farm for the damage done by 28,000 gallons of water to "the floor joists, wooden floors, walls, paint, kitchen cabinets and counters and tile" in addition to damages in the form of lost rent and costs for drying the property.  Letter from Plaintiff to State Farm, dated March 9, 2009, at 3 (attached as Ex. 1 to Affidavit of Terry R. Guebert, which is attached as Ex. D to Defendants' Notice of Removal [Doc 1]).[11]  Plaintiff has not demonstrated how his claim against ServPro for charging an inflated price forms a "significant basis for the claims asserted by the proposed plaintiff class," which includes all plaintiffs in the class action suit.  Just as a removing defendant cannot meet its burden to demonstrate an amount in controversy without a significant demonstration of jurisdictional facts, neither can a plaintiff seeking to invoke an exception to jurisdiction meet his burden merely by alleging that it is met.  Plaintiff has failed to establish that the local controversy exception applies, and the Court finds that it has jurisdiction of this case under CAFA.

---

[11] This analysis compares only compensatory damage amounts between the two classes, because both classes seek treble damages, punitive damages, and attorneys' fees.

### C. Traditional Diversity Jurisdiction

The parties spend a good deal of briefing on the issue of whether Plaintiff's individual claims state an amount in controversy greater than $75,000, enabling traditional diversity jurisdiction to exist pursuant to 28 U.S.C. §§ 1332(a), 1367, and 1441(a). The $75,000 figure is relevant only to traditional diversity jurisdiction, as CAFA does not require any minimum value for an individual claim, as long as the aggregated claims of the individual class members exceed $5 million. 28 U.S.C. § 1332(d)(6). Because the Court finds that it has jurisdiction under CAFA, it need not reach the question of whether it also has traditional diversity jurisdiction, and therefore need not address the value of Plaintiff's individual claims. Thus, it also need not rule on the *State Farm Defendants' Amended Motion for Leave to File Sur-Reply Instanter*, filed November 9, 2009 [Doc. 49], as this motion only addresses an issue related to the existence of traditional diversity jurisdiction.

### D. Leave to File Amended Complaint

Plaintiff filed a *Motion for Leave to File First Amended Complaint* [Doc. 65] on January 4, 2010. This motion was timely filed, as it comports with the deadline established by this Court for adding parties or amending pleadings. *See* Doc. 57. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend should be granted absent a legitimate reason, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Childers v. Independent Sch. Dist. No. 1*, 676 F.2d 1338, 1343 (10th Cir. 1982) ("refusing leave to amend is only justified upon a showing of undue delay, bad faith, or undue prejudice to the opposing party."). None of these reasons appear

present. Therefore, leave to amend is granted.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Remand* [Doc. 20] is DENIED and Plaintiff's *First Motion to Amend/Correct Complaint* [Doc. 65] is GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**